- PSO-

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

————————————————————————

THERESA WILLIAMS,

                    Plaintiff,

                                                    **DECISION AND ORDER**
          -v-                                       **07-CV-212C**

U.S. DEPARTMENT OF TREASURY*INTERNAL
REVENUE SERVICE,
T. ROWE PRICE,
ENTERGY SERVICES, INC.,

                    Defendants.

————————————————————————



## **INTRODUCTION**

          On March 30, 2011, this Court ordered, *inter alia,* that *pro se* plaintiff's motions to

file a third amended complaint and to file supporting exhibits under seal be granted.

(Docket No. 23).[1]   The Court accordingly directed that plaintiff's proposed amended

---

[1] Plaintiff commenced this action with a complaint filed on March 30, 2007 (Docket No. 1) and naming the "Internal Revenue Department" as the sole defendant.  Shortly thereafter, she moved to stay the action. (Docket No. 3).  By Order dated July 30, 2007, the Court granted the request for a stay, and directed plaintiff to make appropriate application to the Court by October 15, 2007.  (Docket No. 5).  Plaintiff then moved to lift the stay and on May 30, 2008 filed an amended complaint which added as defendants Entergy Services, Inc. and T. Rowe Price.  (Docket Nos. 6 and 7).  By Order dated September 24, 2008, the Court granted plaintiff's motion to lift the stay, and upon review of the amended complaint, determined that the claims asserted therein would be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B) unless plaintiff filed a further amended complaint as directed in the Order by October 24, 2008.  (Docket No. 8).  Thereafter, following the granting of several requests for an extension of time (Docket Nos. 10, 12), plaintiff filed a second amended complaint (Docket No. 13) and a motion for leave to file supporting exhibits under seal (Docket No. 14).  Prior to the Court's review of the second amended complaint, plaintiff filed a motion requesting that the action again be stayed pending the completion of certain audits or investigative reports by several federal and state agencies which plaintiff believed relevant to the instant action.  (Docket No.15).  Plaintiff's application for a stay was granted, subject to the requirement that she timely make application to lift the stay and explain why it should be continued or withdraw the action, and her motion to file exhibits under seal was ordered to be held in abeyance until such time as the Court either lifted the stay or dismissed the action.  (Docket No. 16). Thereafter, plaintiff filed, *inter alia*, a motion to file a further amended complaint.  (Docket No. 22).  By Order dated March 29, 2011, the Court (Hon. Michael A. Telesca) granted plaintiff's motion to file a further (third) amended complaint and directed that the exhibits previously filed by plaintiff in support of her second amended complaint be filed under seal inasmuch as they appeared to be relevant to the allegations set forth in the third amended complaint.  (Docket No. 23)

complaint be filed as her "Third Amended Complaint" and that plaintiff's supporting exhibits 1-3 be filed under seal in accordance with W.D.N.Y. Loc. R. Civ. P. 5.4(b). (*Id., see also* Docket No. 24 (Third Amended Complaint) and Docket No. 25 (Sealed Document). The March 30, 2011 Order noted that the third amended complaint would be reviewed pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons set forth below, the Court determines that plaintiff's claims must be dismissed.

## STANDARD OF REVIEW

Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). Moreover, "a court is obliged to construe [*pro se*] pleadings liberally" *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004); *and see Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). "The policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent

2

forfeiture of important rights because of their lack of legal training.' " *Abbas*, 480 F.3d at 639 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)). "A document filed *pro se* is to be liberally construed, ..., and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S. at 94 (internal quotation marks and citations omitted).

Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although a complaint need not include "detailed factual allegations," it must do more than put forth "labels and conclusions." *Id.* at 555. A claim will be considered "plausible on its face . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Moreover, even assuming that a complaint satisfies the liberal pleading standards applicable to a *pro se* plaintiff, a claim must be dismissed if it is one over which the Court lacks subject-matter jurisdiction. It is well established that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Natl. Comm. to Pres. Soc. Sec. & Medicare v. Philip Morris USA Inc.*, 395 Fed. Appx. 772, 774 (2d Cir. 2010) (summary order); *Brow v. Gov't of the United States V.I.*, 2012 U.S. Dist. LEXIS 169223, at *4 (E.D.N.Y. 2012) (The court is duty bound to ascertain that it ha[s] jurisdiction before it may adjudicate the merits of a claim. Accordingly,

3

it may dismiss an action for lack of subject matter jurisdiction on motion or *sua sponte*.")
(internal quoation and ciitations omitted).

## DISCUSSION

The third amended complaint restates plaintiff's claims that defendants Entergy
Services, Inc. ("Entergy") and T. Rowe Price incorrectly reported to defendant Internal
Revenue Service (IRS) certain distributions made to or on behalf on plaintiff for the years
2002 and 2004-2007, as a result of which the IRS incorrectly assessed additional taxes
and penalties on plaintiff for the years in question.  The sealed exhibits (Docket No. 25)
include correspondence between plaintiff and defendant Entergy which plaintiff believes
spells out the errors made by defendants Entergy and T. Rowe Price in reporting the
distributions in question.  Plaintiff asserts, as the jurisdictional bases for her claims against
the defendants, Title 26 of the United States Code (Internal Revenue Code) and the
Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*.

A.  Claims against the Internal Revenue Service[2]

Plaintiff maintains that the improper "coding" on forms 1099 of certain distributions
made to or on behalf of plaintiff defendants Entergy and T. Rowe Price caused the IRS to
improperly treat such payments as taxable income and to issue tax assessments and
penalties against plaintiff for the years in question.[3]  Plaintiff seeks abatement or refund
by the IRS. of those assessments.

---

[2]The third amended complaint designates the "U.S. Department of the Treasury*Internal Revenue
Service" as defendant.  For the reasons explained *infra*, the Court is substituting the United States as a
defendant in place of the IRS.

[3] The basis of plaintiff's claims that the payments or distributions made to her or on her behalf by
defendants Entergy and T. Rowe Price were improperly coded on the forms 1099 issued by them are
explained in *infra* in connection with the Court's review of her claims against those defendants.

4

This Court's jurisdiction over federal tax disputes was spelled out in its decision dated September 24, 2008 ("September 24 Order"), familiarity with which is assumed (Docket No. 8).  The September 24, 2008 Order noted, *inter alia*, in this regard  that the United States Tax Court has exclusive jurisdiction to review IRS tax deficiency assessments; that this court has jurisdiction to review challenges to certain penalties imposed by the IRS, but lacks jurisdiction to address other penalties or claims for the abatement of interest imposed by the IRS for tax deficiencies, as such claims are the exclusive province of the Tax Court; and that while federal district courts have jurisdiction over a tax refund suits, such a suit must be preceded by a timely filed claim for refund with the IRS.  (Docket No. 8, at 9-12).  The September 24 Order noted that it was "difficult to ascertain, from the barebones allegations of the complaint, the precise nature of the tax claim or claims plaintiff is attempting to assert, *i.e.,* whether she is seeking to challenge the *assessment* of additional taxes, penalties and interest that were imposed upon her for the years 2002-2006, or whether she is instead asserting *refund claims* for amounts which she believes that the IRS erroneously forced her to pay."  In this regard, the September 24 Order discussed and contrasted the jurisdiction of both this court and the United States Tax Court with respect to taxpayer claims arising from, *e.g.*, assessments of tax and penalties, claims for refund of taxes paid and the imposition of interest on unpaid taxes. The Court then concluded that while it appeared doubtful, based upon the allegations of plaintiff's first amended complaint, that it had jurisdiction over plaintiff's tax claims, it would nevertheless afford plaintiff the opportunity to further amend her claims given plaintiff's *pro se* status, and the complexity of the statutes governing tax assessments, penalties and

refund claims.  The Court advised, in this regard, that in stating her claims against the IRS,

plaintiff should "should clearly indicate whether she is seeking to contest an assessment

or assessments of tax and penalties by the IRS, or to claim refunds of federal income taxes

that she has paid.  In addition, she should attach to her further amended complaint copies

of notices of deficiency and other documents from the IRS that indicate the additional taxes

and penalties that the defendant has assessed or otherwise claimed to be owing."

As set forth in her third amended complaint, plaintiff's Statement of Claim against

the IRS states:

> On 11/1/2004, defendant Internal Revenue Service issued a letter
> of stating Individual Tax assessments.  Income was reported/
> recorded incorrectly.  Tax calculation summary was incorrect.
> Therefore, all I.R.C. (Internal Revenue Codes) are not correct.
> Please note that the tax years for 2005, 2006 & 2007 remain
> coded incorrectly and therefore have added a 10% penalty to the
> taxpayer incorrectly.  The federal basis for this claim is under Title
> 26 and Title 29.  Plaintiff, seeks refund and applicable damages
> under the law.  Note form #843 and form #5329 is pending a
> review in addition, the request for audit on the employer/sponsor,
> Entergy, Inc.

(Docket No. 24 at 6 ["First Claim"]).

Plaintiff's allegations are not sufficient to allow her tax claims to proceed.  As

explained in the September 24 Order, this Court does not have jurisdiction over lawsuits

seeking to challenge assessments of tax deficiency by the IRS; 26 U.S.C. § 6330(d) vests

exclusive jurisdiction over determinations by the IRS assessing a tax deficiency with the

United States Tax Court.  *See* discussion, Docket No. 8 at pp. 10-11; *see also*, *Follum v.*

*United States*, 1999 U.S. Dist. LEXIS 4036, at * 6 (W.D.N.Y. March 5, 1999) ("Plaintiff . .

. is attempting to challenge the underlying merits of the tax assessments made against him

for the tax years 1990, 1991, 1992 and 1993. Generally, however, tax assessments may

only be contested in the United States Tax Court or, *upon payment of the assessment,* in a refund action in federal district court or the Court of Claims.") (emphasis added) (citing *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 8 L. Ed. 2d 292, 82 S. Ct. 1125 (1962)).  Therefore, to the extent that plaintiff's claim against the IRS is premised upon her allegation, quoted above, that defendant issued incorrect assessments of tax against her, this Court lacks subject matter jurisdiction.

This Court does, as explained in the September 24 Order, have jurisdiction over *refund* claims by plaintiff.  (Docket No. 8, at 12).  Pursuant to 28 U.S.C. § 1346(a)(1), District Courts have jurisdiction over actions for the recovery of taxes alleged to have been erroneously or illegally assessed or collected.  The IRS itself is immune from civil actions seeking tax refunds. *Allison v. Internal Revenue Service*, 2012 U.S. Dist. LEXIS 45257, at *n. 1 (D. Conn.  2012) (citing *Murphy v. IRS*, 493 F.3d 170, 173 (D.C. Circuit)). However, Congress has broadly consented to suits against the United States for the refund of any federal taxes. 28 U.S.C. § 1346(a)(1); *see Murphy*, 493 F.3d at 173 (waiver of immunity from  tax refund actions under 28 U.S.C. § 1346(a)(1) applies to United States but not IRS).  When, as in the instant action, the Internal Revenue Service has been sued for refund, the United States has been substituted for the Internal Revenue Service as the defendant. *See, e.g., Baker v. Internal Revenue Service*, 2009 U.S. Dist. LEXIS 44623, at *6 (D. W. Va. 2009); *Toland v. Internal Revenue Service*, 2000 U.S. Dist. LEXIS 7467 (D. Nev. 2000).  Such substitution may be effected by the Court *sua sponte.  See* 26 U.S.C. § 7422(f)(2) (providing that where a suit for recovery of an internal revenue tax is improperly brought against an officer or employee of the United States, "the court shall

7

order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action commenced."); *Reyes v. Dep't of the Treasury,* 2009 U.S. Dist. LEXIS 31471, at *13-14 I. (E.D. Cal. 2009) (deeming complaint to be amended to substitute the United States as the defendant); *Toland*, 2009 U.S. Dist. LEXIS 7467, at *1 (substituting the United States for the IRS as the defendant).  Accordingly, the Court will substitute the United States as a defendant in this action in lieu of the U.S. Department of Treasury, Internal Revenue Service.

However, as explained in the September 24 order, a taxpayer's ability to prosecute a refund action against the United States in U.S. district court is subject to the jurisdictional prerequisites that she have first paid the tax at issue and timely filed a valid refund claim with the IRS.  (Docket No. 8 at 12).  *Follum*, 1999 U.S. Dist. LEXIS 4036, at *7 ("Under 26 U.S.C. § 7422(a), plaintiff may bring a refund action in district court only after paying his tax liability in full and filing a claim for refund with the IRS.");  *see also Falik v. United States*, 343 F.2d 38, 42 (2d Cir. 1965) ("[A] person whose sole claim is that a federal tax assessment was not well grounded in fact and law must 'pay first and litigate later.'" *Falik,* 343 F.2d at 42 (quoting Flora, 362 U.S. at 164) (quoting  *Flora v. United States*, 362 U.S. 145, 164, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960); *Stewart v. IRS*, 1995 U.S. Dist. LEXIS 5159, at *4-7 (E.D.N.Y. 1995) (jurisdictional prerequisites for filing a tax refund suit require that claimant "have paid any outstanding tax assessment, including interest and penalties" and timely file a refund claim with the IRS. (citations omitted).  The limitations period applicable to such refund claims is set forth in 26 U.S.C. § 6532:

> (a) Suits by taxpayers for refund.
> (1) General rule. No suit or proceeding under section 7422(a) [26 USCS § 7422(a)][4] for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

26 U.S.C. § 6532(a)(1).

While plaintiff in the instant matter alleges that she "seeks refund," neither the allegations of the amended complaint nor the sealed exhibits contain information showing that she paid the tax she is seeking to contest and timely filed a refund claim or claims with the IRS. The Court notes, in this regard, that the September 24 Order advised plaintiff to "clearly indicate whether she is seeking to contest an assessment or assessments of tax and penalties from the IRS or to claim refunds of federal income taxes that she has paid" and, in addition, to attach to the amended complaint copies of notices of deficiency and other relevant documents from the IRS that would serve to elucidate that nature of her claims. (Docket No. 8 at 13). The amended complaint does not clearly indicate the nature of plaintiff's claims, nor does plaintiff append notices or statements from the IRS that would enable the Court to ascertain whether plaintiff is seeking to contest assessments of tax or

---

[4] 26 U.S.C. § 7422(a) provides:
No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

to obtain refunds of taxes paid–or both.  Plaintiff does  refer to "form # 843," which is the IRS "Claim for Refund" form, as well as "form # 5329" which is the IRS form used to report additional taxes on the early distribution of *e.g.,* qualified retirement plans.  However, she does not attach copies of those forms, assuming she has filed them with the IRS, and she does not explain what she means by indicating that the forms are "pending a review."[5]  As noted, the commencement of a refund suit in this Court is jurisdictionally proper only where a taxpayer has paid the tax at issue, and has filed a refund claim which has been denied by the IRS.  Plaintiff's third amended complaint gives no indication that a refund claim has been filed with *and* denied by the IRS *or* that the IRS has not rendered a decision on or otherwise responded to a refund claim.

Inasmuch as the timely filing of a refund claim is a jurisdictional prerequisite of a refund suit, *Deyo v. IRS*, 134 Fed. Appx. 475, 476 (2d Cir. 2005) (unpublished), plaintiff's failure to explicitly show or allege that she filed such a claim and that such claim has been denied by the IRS, and the date of such denial, deprives this Court of subject matter jurisdiction over any claim for refund against the United States  The Court will accordingly dismiss plaintiff's claim against the United States but such denial will be without prejudice to plaintiff re-filing in the event that she does in fact (as her allegations might be construed as indicating) have a claim for refund timely submitted to the IRS on form 843, and such claim is, as plaintiff appears to state, "pending."  *See Jurca v. United States,* 1999 U.S. App. LEXIS 34060, at *3-4 (6th Cir. 1999) ("Jurca's district court action was premature

---

[5]The Court notes that Form 843, which the complaint indicates is "pending" before the IRS, is not the correct form to use in requesting a refund of income tax.  *See*  Instructions for Form 843 (Department of the Treasury), http://www.irs.gov/pub/irs-pdf/i843.pdf.

because the IRS had not denied Jurca's refund claim, and less than six months had elapsed from the date Jurca filed his return requesting a refund until he filed suit. See 26 U.S.C. § 6532(a).").

The Court likewise lacks jurisdiction over plaintiff's related claims that the IRS incorrectly assessed penalties and interest. (Docket No. 24 at 1, 6).  To the extent that plaintiff's barebones allegation[6] with respect to interest can be construed as a request for an *abatement* of interest imposed by the IRS on the deficiencies assessed against her, as explained in the September 24 Order (Docket No. 8 at 14), under 26 U.S.C. §6404, only "the Tax Court provides the exclusive forum for judicial review of a refusal to abate interest under §6404(e)(1)." *Hinck v United States*, 550 U.S. 501, 506-07, 127 S. Ct. 2011, 2013, 167 L. Ed.2d 888 (2007).  While the Court would arguably have jurisdiction under 28 U.S.C. §1346(a)(1)  to consider a claim for the *refund* of interest imposed by the IRS, *see Magnone v United States,* 733 F. Supp. 613, 615 (S. D. N. Y. 1989),  aff'd, 902 F.2d 192 (2d Cir. 1990), as with the taxes to which the interest relates, the Court can only entertain such a claim for refund if all of the interest that has accrued on the deficiency has been paid. *Id.* at 616.

The allegations of the third amended complaint likewise provide no basis for this Court to exercise jurisdiction over whatever penalties plaintiff is seeking to contest. *See* September 24 Order at 10-11 (Docket No. 8) (discussion of the jurisdiction of the Tax Court and the U.S. District Court regarding tax penalties).

---

[6]With respect to penalties and interest, plaintiff's third amended complaint contains only the conclusory assertion that "[p]enalties and interest are assessed incorrectly."  (Docket No. 24 at 1).

B. Claims against Entergy Services, Inc.

Plaintiff alleges (Second Claim) that defendant Entergy issued two forms 1099-R (Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.) for the year 2002 which erroneously reported distributions from the "Savings Plan of Entergy Corporation and Subsidiaries" as taxable income when such distributions should have been reported as tax-free. The two Forms 1099-R are included in the sealed exhibits to the complaint, See Docket No. 25 at p. 15. They show distributions to plaintiff from Entergy's Savings Plan in the amounts of $1,120 and $60,994.51, respectively.

Plaintiff asserts that her claim against Entergy arises under Title 29 of the U.S. Code (ERISA), and she seeks damages "of investment, credit defamation, financial loss, failing to maintain employment records, etc. In addition, the incorrect coding added to the loss of benefits." (Docket No. 24 at 6). A more specific statement of plaintiff's ERISA claims against Entergy is set forth in the attachment to the third amended complaint, which is a copy of a letter dated December 17, 2010 which she sent to the Employment Benefits Security Administration of the U.S. Department of Labor asking that an investigation and audit of Entergy be initiated for "the E.R.I.S.A. violations that have occurred." Plaintiff's letter then recites five sections of the ERISA statute: §§ 1021 (Duty of Disclosure and Reporting), 1027 (Retention of Records), 1059 (Record Keeping and Reporting), 1104 (Fiduciary Duties), and 1105 (Liability for Breach of Co-Fiduciary Duty). (Docket No. 24 at 7). The essence of plaintiff's claim against Entergy appears to be that defendant breached its fiduciary duties to plaintiff by issuing, or allowing T. Rowe Price in its capacity as savings

plan administrator to issue, incorrectly coded forms 1099-R in reporting certain distributions from the savings plan to plaintiff upon termination of her employment.

(i) Distribution of $60,994.51

As explained in her letter to Entergy dated April 10, 2009, responding to a letter from defendant dated January 12, 2009, both of which are contained in the sealed exhibits (Docket No. 25), plaintiff maintains that Entergy failed to use the proper distribution code in box 7 of the Form 1099-R in reporting the $60,994.51 distribution. Plaintiff alleges (Docket No. 25 at 3) that the distribution code that should have been used in reporting the distribution to the IRS in box 7 was the number "3" which is used to report distributions to recipients who are disabled within the meaning of I.R.C. § 72(m)(7). *See* IRS Instructions for Forms 1099-R at p.13, http://www.irs.gov/pub/irs-pdf/i1099r.pdf. *see also Welker v. Comm'r*, T.C. Summary Opinion 2009-193, at *2-3 (Tax Court 2009) ("Each of these amounts was reported on a Form 1099-R designating a distribution code 3 indicating an early distribution due to disability.") The distribution was instead coded in Box 7 of the Form 1099-R as "G", which is used to report direct rollovers from qualified retirement plans "to an eligible retirement plan (another qualified plan, a 403(b) plan *or an IRA*." IRS Instructions for Forms 1099-R at at p.14.

The January 12, 2009 letter from Entergy to which plaintiff's April 10 letter responded, explained that the 1099-R was coded "G" to reflect the fact that the distribution had been made in the form of a direct rollover from a qualified retirement plan to an Individual Retirement Account (IRA) maintained by defendant T. Rowe Price. (Docket No. 25 at 25-26). It is clear from other documents contained in plaintiff's exhibits that she did, in fact make a rollover contribution to an IRA maintained by T. Rowe Price in 2002. *See*

Docket No. 25 at 2-13 [letter dated August 22, 2002 from T. Rowe Price to Theresa C. Williams indicating a rollover distribution from Entergy Savings Plan] and at 14 [2002 Form 5498, issued by T. Rowe Price Trust Co. and reporting "rollover contributions" by "Theresa Williams Rollover Account"].

A rollover of amounts held in a qualified retirement plan to an IRA is not a taxable event. *See* 26 U.S.C. §402(c); 26 C.F.R. §1.402(c)-2; *Timmerman v. Comm'r*, 2002 Tax Ct. Summary LEXIS 51, at *7 (Tax Court, 2002) ("Section 402(c) provides that certain amounts paid to an employee from a qualified trust are considered "rollover" distributions, and thus excludable from income. Under section 402(c)(5), a transfer from a qualified plan to an eligible retirement plan, including an individual retirement account described in section 408(a) or individual retirement annuity described in section 408(b), shall be treated as a rollover contribution described in section 408(d)(3).") Therefore, Entergy's coding of the form 1099-R issued to plaintiff for 2002, reporting the rollover of the amount in the Entergy Savings Plan to an IRA did not, contrary to plaintiff's allegation, report that distribution as taxable income. Defendant's use of the "G" code in reporting the rollover distribution of $60,994.51 from the Entergy Savings Plan as a rollover contribution to an IRA maintained with T. Rowe Price was correct, and would not have caused he IRS to treat that distribution as a taxable event to the plaintiff. Plaintiff's assertion that Entergy "[r]eported rollover 2X to the internal revenue and issued 2 1099's to the plaintiff, stating savings plan was actually, taxable income when savings plan was actually tax-free savings" (Docket No. 24 [Third Amended Complaint] at 6 is thus not correct: the 1099s issued by Entergy in fact reported the distribution to plaintiff as a tax-free rollover.

14

Plaintiff also alleges that Entergy "reported false information to benefit carrier concerning employment status." *Id.* This allegation is fleshed out in the April 10, 2009 letter sent by plaintiff to Entergy in which she maintains that T. Rowe Price's use of distribution code1 in subsequently reporting distributions to plaintiff from her IRA, (*see* discussion at "C" *infra*), resulted her being coded by defendant T. Rowe Price, when it subsequently issued 1099s to plaintiff as "terminated' (Code "1")[7] rather than as disabled (Code "3"). *See* Docket No. 25 at pp. 3-5. There is nothing, however, in the 1099R issued by Entergy reporting the $60,994 distribution which uses Code 1 or which otherwise reports plaintiff as having been "terminated". As explained above, the 1099-R reflecting the $60,994.51 distribution shows only Code G, reflecting a distribution from the Entergy Saving Plan to plaintiff's IRA.

In accordance with the foregoing analysis, the Court concludes that plaintiff's allegations with respect to the Form 1099-R issued by Entergy and reporting plaintiff's rollover of $60,994.51 from Entergy's savings plan to an IRA fail to state a claim, and must be dismissed.

### (ii) Distribution of $1,120

The second distribution reported by Entergy to plaintiff on a Form 1099-R for the year 2002 reflects a distribution of $1,120, and uses the distribution code "3" to classify the distribution in box 7 of the form. (Docket No. 25, p. 14). As explained in connection with the discussion of the $60,994.51 distribution, *supra*, code "3" is used to report distributions to recipients who are disabled. Accordingly, as explained in Entergy's letter to plaintiff

---

[7]Contrary to plaintiff's characterization of Code 1 as "terminated," Code 1 is labeled by the IRS as "early distribution, no known exceptions." *See* http://www.irs.gov/pub/irs-pdf/i1099r.pdf. (P. 13).

plaintiff's claims against defendant T. Rowe Price concern the coding of Forms 1099-R issued to plaintiff.  Plaintiff alleges that defendant incorrectly coded distributions made to her for the years 2004-2007 from the IRA maintained by T. Rowe Price with the result that the distributions were treated by the IRS as taxable or at least partly taxable.  For the years in question, defendant issued forms 1099-R to the plaintiff showing distributions to her in the amounts of $$10,082.96, 23,034.01, 10,451.14 and 1,700.00, respectively.  (Docket No. 25, pp. 5, 16-18).  Box 7 of the forms 1099-R for these years reported a distribution code of "1".  As stated in the IRS Instructions for Forms 1099-R, distribution code "1" is used to report an early distribution, *i.e.*, before age 59½, from, *e.g.*, an IRA, where the payer does not know that any of the exceptions to the taxability of the distribution set forth under Codes 2, 3 or 4 applies to the distribution.    *See* http://www.irs.gov/pub/irs-pdf/i1099r.pdf., p. 13.

Plaintiff asserts that the distributions to her for the years in question should have been coded "3", which as noted *supra,* is used to  report distributions to recipients who are disabled within the meaning of I.R.C. § 72(m)(7).  The consequence of classifying a recipient as "disabled" within the meaning of distribution code 3 is that she will be relieved of the 10-percent additional tax that would otherwise be owing on an early distribution from a qualified retirement plan pursuant to 26 U.S.C. § 72(t)(1).  *See Welker*, 2009 Tax Ct. Summary LEXIS 196, at *4-5 ("Section 72(t)(1) generally imposes a 10-percent additional tax on an early distribution from a qualified retirement plan, unless the distribution comes within one of the statutory exceptions under section 72(t)(2). . . . Section 72(t)(2)(A)(iii) provides an exception for distributions 'attributable to the employee's being disabled within the meaning of subsection (m)(7)'").  The disability exception, if applicable, relieves the

17

taxpayer only of the 10-percent additional tax; ordinary income tax is still owed on an early distribution out of an IRA.  26 U.S.C. § 408(d)(1); *see also, Colegrove v. Comm'r,* T.C. Summary Opinion 2010-44, 2010 Tax Ct. Summary LEXIS 45, at *4-5 (*"*Generally, section 408(d)(1) provides that 'any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee * * * in the manner provided under section 72.'" (citing *Campbell v. Commissioner*, 108 T.C. 54 (1997)).

Review of this claim necessitates close examination of the forms 1099-R issued by the defendant to plaintiff for the four years in question and the IRS instructions to the payers of IRA distributions and to the recipients of such distributions.  The instructions for reporting a distribution from pensions, IRAs etc. advise that the payer is "not required to compute the taxable amount of a traditional IRA."  Therefore, the payer is instructed to report the total amount distributed from an IRA in box 2a ("Taxable Amount") of form 1099-R which will be the same as the amount reported in Box 1 "Gross Distribution".  *See* Instructions for Forms 1099-R and 5498 for years 2004-2007.[8]  The instructions to the recipient of the 1099-R advise that "[f]or distributions from a traditional individual retirement arrangement (IRA) . . . generally the payer is not required to compute the taxable amount. Therefore the amounts shown in boxes 1 and 2a will be the same most of the time.  See the form 1040 or 1040A instructions to determine the taxable amount."  *See* 1099-R

---

[8]The 1099-R instructions for both the payer and recipient for the years at issue (2004-2007), discussed and quoted herein, are available on the IRS website, and have been reviewed by the Court in considering plaintiff's claims against T. Rowe Price. See http://www.irs.gov/pub/irs-prior/f1099r--2004.pdf; http://www.irs.gov/pub/irs-prior/f1099r--2005.pdf; http://1099plus.com/2006%201099-R%20Instructions%20for%20Recipient.pdf; http://1099plus.com/2007%201099-R%20Instructions%20for%20Recipient.pdf (Recipient Instructions); http://www.irs.gov/pub/irs-prior/i1099r--2004.pdf; http://www.irs.gov/pub/irs-prior/i1099r--2005.pdf; http://www.irs.gov/pub/irs-prior/i1099r--2005.pdf; http://www.irs.gov/pub/irs-prior/i1099r--2006.pdf; http://www.irs.gov/pub/irs-prior/i1099r--2007.pdf

Instructions for Recipient, years 2004-2007.[9]   Review of the forms 1099-R issued by T. Rowe Price to plaintiff for the years in question shows that the same distribution amounts are reported in boxes 1 and 2a.  (Docket No. 25 at 16-19).

The instructions to payers further advise with respect to the first box 2b ("Taxable Amount Not Determined") that an "X" should be entered in this box "only if you are unable to reasonably obtain the data needed to compute the taxable amount.  If you check this box, leave box 2a blank. Except for IRAs, make every effort to compute the taxable amount."  The corresponding instructions to the recipient advise that if the first box on the box 2b is checked "the payer was unable to determine the taxable amount, and box 2a should be blank.  However, if this is a traditional IRA, SEP or SIMPLE distribution, then see *IRAs* earlier."  The reference here is to the section of the recipient instructions, quoted previously, which instructs that in the case of a distribution from, *inter alia*, an IRA, the payer is not required to compute the taxable amount and therefore the amounts reported in boxes 1 and 2a "will be the same most of the time."  While hardly a model of clarity, when read together, the 1099-R instructions for the payer and the recipient appear to indicate that while box 2a ("Taxable amount") should be left blank if the first box 2b ("taxable amount not determined") is checked, this directive does not apply where the distribution is from an IRA, as to which the payer is not required to compute the taxable amount.  In that situation, the payer is to report the same figure for the total distribution (box 1) and the taxable amount of that distribution (box 1a), even while checking box 2b ("Taxable amount not determined").  It is then encumbent upon the recipient, as indicated

---

[9]*See* n. 1, *supra.*

19

in the IRS instructions to the recipient, to consult the form 1040 or 1040A instructions to determine the taxable amount.

The forms 1099-R issued by T. Rowe Price for the years in question appear to follow the reporting format outlined above: boxes 1 and 2a report the same distribution amount and box 2b is checked, which, as explained above, left it to the recipient, the plaintiff herein, to determine the taxable amount of the IRA distribution that she had received.  (Docket No. 25, at 16-19).

Plaintiff's claim, with respect to the 1099s issued by defendant, is that T. Rowe Price should have coded box 7 ("Distribution code") of the form as "3", which, as explained *supra* in connection with the Court's consideration of the claim against defendant Entergy, is the designation for a recipient classifiable as disabled within the meaning of  I.R.C. § 72(m)(7). Rather than using distribution code 3, however, defendant used code 1, which, according to the form's instructions, is to be used "only if the employee/taxpayer has not reached age 59 ½ and you do not know if any of the exceptions under Code 2, 3 or 4 apply."   Notably, the general instructions to issuers of form 1099-R with respect to Box 7 state that the payer should, in filling out the Form 1099-R, "[r]ead the codes carefully and enter them accurately because the IRS uses the codes to help determine whether the recipient has properly reported the distribution. If the codes you enter are incorrect, the IRS may improperly propose changes to the recipient's taxes."  *See* Instructions for Forms 1099-R and 5498 ["Box 7. Distribution Code(s)"], cited in n. 7, *supra.*

Construing the allegations of the third amended complaint liberally, as required with respect to the pleadings of *pro se* litigants, plaintiff is asserting that defendant T. Rowe Price, as trustee of her IRA, breached a fiduciary duty when it failed to properly code IRA

20

distributions made to her for the years 2004-2007, as a result of which the Internal Revenue Service treated as taxable distributions that would not have been so classified had the defendant used the proper code (code 3–"disability").  Plaintiff invokes, as the basis for this claim, Title 29 of the United States Code, which contains the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et seq.

Only plaintiffs who are properly considered "participants" or "beneficiaries" (or "fiduciaries") of an employee benefit plan have standing to sue under ERISA. *See Caltagirone v. NY Cmty. Bancorp, Inc.*, 257 Fed. Appx. 470, 472 (2d Cir. 2007) (unpublished); *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 200-01 (2d Cir. 2005); *DaPonte v. Manfredi Motors, Inc.*, 157 Fed. Appx. 328, 331 (2d Cir. 2005) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004)).  IRA accounts, like the one held by plaintiff, "are explicitly carved out of the scope of ERISA." *Burns v. Del. Charter Guar. & Trust Co.*, 805 F. Supp. 2d 12, 20 (S.D.N.Y. 2011); *see* 29 U.S.C. § 1051(6) (exempting from coverage under Title I of ERISA "an [IRA] or annuity described in section 408 of [the Code]"); 29 C.F.R. § 2510.3-2(d)(1) ("For purposes of title I of [ERISA], the terms 'employee pension benefit plan' and 'pension plan' shall not include an [IRA] described in section 408(a) of the Code.").  Courts have repeatedly held that ERISA does not apply to IRAs. *See, e.g., Rose v. The Long Island R.R. Pension Plan*, 828 F.2d 910, 913 (2d Cir. 1987); *Charles Schwab & Co. v. Debickero*, 593 F.3d 916, 919 (9th Cir. 2010) ("IRAs are specifically excluded from ERISA's coverage" because IRAs involved "no employer oversight, no ongoing employer commitment, nor any potential for employer abuse");

*Burns, supra; Grund v. Del. Charter Guar. & Trust Co.*, 788 F. Supp. 2d 226, 236 (S.D.N.Y. 2011).

In addition, the fact that the amounts held in plaintiff's IRA maintained with T. Rowe Price were rolled over from the Entergy Savings Plan, which was administered by T. Rowe Price, makes no difference in this regard. *See SEC v. Aragon Capital Advisors, LLC,* 2011 U.S. Dist. LEXIS 82531, at *23, n. 12 (S.D.N.Y. 2011) ("[T]o the extent that [defendant] contends that ERISA protects his IRAs because they were "rolled-over" from a qualified plan, his contention is meritless. ERISA plainly states that IRAs are not within the statute's coverage. 29 U.S.C. § 1051(6).   Moreover, the fact that the funds in an IRA may have come from a qualified plan 'is beside the point' if the IRA is 'established and maintained' by the employee, not the employer, and therefore outside the scope of ERISA." (citations omitted); *see also In re Rayl*, 299 B.R. 465, 467 (Bankr. S.D. Ohio 2003) (rejecting bankruptcy trustee's argument that IRA plans were employee benefit plans and therefore ERISA preempted state law which allowed IRA accounts to be considered exempt: "Although the ultimate source of the rolled-over funds was a plan established and maintained by the debtor's former employer, it does not follow that the IRA accounts were established and maintained by her former employer. Rather, it is the debtor who rolled over the funds into the IRA accounts and who maintains them with T. Rowe Price."); *In re Mann*, 134 B.R. 710, 713 (Bankr. E.D.N.Y. 1991) ("The use or disposition of funds after distribution from an ERISA Plan is not governed by the provisions of ERISA.") (emphasis added).

22

In accordance with the above, the Court concludes that plaintiff's claims against T. Rowe Price must be dismissed because does not have standing to assert ERISA claims against the defendant and has otherwise failed to state a claim. *See Burns,* 805 F. Supp. 2d at 20-21 (dismissing plaintiff's ERISA claims related to IRA accounts for failure to establish standing or to state a claim).

## CONCLUSION

For the reasons set forth above, the Court determines that United States shall be substituted for the U.S. Department of Treasury, Internal Revenue Service as a defendant in this action; that plaintiff's claims against the United States challenging the assessment of taxes, penalties and interest by the Internal Revenue Service are dismissed with prejudice for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3), and in the alternative for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii); that plaintiff's claims for refund of income taxes, penalties and/or interest against the United States are dismissed without prejudice; that plaintiff's claims against Entergy Services, Inc. are dismissed with prejudice for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii); and that plaintiff's claims against T. Rowe Price are dismissed with prejudice for lack of standing and for failure to state a claim upon which relief may be granted, 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438, 82 S. Ct. 917 (1962). Further requests to proceed on appeal as a poor person should be directed, on

motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

## ORDER

IT HEREBY IS ORDERED, that the United States be substituted for the U.S. Department of Treasury, Internal Revenue Service as a defendant in this action;

FURTHER, that plaintiff's claims against the United States challenging the assessment of taxes, penalties and interest by the Internal Revenue Service are dismissed with prejudice;

FURTHER, that plaintiff's claims for refund of income taxes, penalties and/or interest against the United States are dismissed without prejudice;

FURTHER, that plaintiff's claims against Entergy Services, Inc. are dismissed with prejudice;

FURTHER, that plaintiff's claims against T. Rowe Price are dismissed with prejudice;

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied;

FURTHER, that the Clerk of the Court is hereby ordered to close this case.

SO ORDERED.

Dated:      JAN. 24      , 2013
            Rochester, New York

_____
CHARLES J. SIRAGUSA
United States District Judge

24